UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOUISIANA CITIZENS PROPERTY
INSURANCE CORPORATION, AS
PARTIAL SUBROGEE TO THE RIGHTS
OF THOMAS CAMBELL, AND THOMAS
CAMPBELL

                                                 CIVIL ACTION

VERSUS

                                               NO. 09-146-JJB-DLD

GENERAL ELECTRIC CO. (D/B/A
GENERAL ELECTRIC APPLIANCE
COMPANY) AND ELECTRIC
INSURANCE COMPANY

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE THE EXPERT OPINION OF PLAINTIFFS' EXPERT TED KAPLON

This matter is before the Court on a motion by the defendants, General Electric Company and Electric Insurance Company ("collectively GE").  (Doc. 9.) GE moves for summary judgment and to exclude the expert opinion of plaintiffs' expert, Ted Kaplon.  Plaintiffs, Louisiana Citizens Property Insurance Corporation and Thomas Campbell (collectively "Citizens"), filed an opposition. (Doc. 13.)  GE filed a reply. (Doc. 14.)  This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.  Oral argument is not necessary.  For the following reasons, the Court DENIES GE's motion to the extent it seeks to exclude Ted Kaplon's expert opinion.  Furthermore, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

1

## Factual Background

On February 27, 2008, fire damaged the Denham Springs, Louisiana, home of Thomas and Janice Campbell.   Livingston Parish Fire Department Deputy Chief Joe Armenio, responding to a 5:09 p.m. alarm, arrived at 5:20 p.m. to investigate.   Armenio, a certified fire investigator, determined the fire's cause to be a faulty range in the Campbells' kitchen.   Armenio noted the burners were off and he determined that a short within the control panel of an electrical range was the specific cause.

Louisiana Citizens Property Insurance Corporation, issuer of the Campbells' homeowner's insurance policy, hired an electrical engineer to inspect the Campbells' house.   The engineer, Ted Kaplon, inspected the house on March 14, 2008; he also determined the fire started inside the range.   He found no evidence of electrical activity within the wires leading to the range and determined the range was turned off at the time of the fire.

GE manufactured the range, an Americana brand electric range, Model ABS300J1WW, Serial Number RH151748P.   Citizens contend that the range was the subject of a product safety recall for "faulty wiring."   GE acknowledges a recall for Americana ranges, but denies that the recall included the Campbells' range.   According to GE, they manufactured the Campbells' range in August 2005, but the recall covered ranges sold from June to July 2004.

## Summary Judgment Standard

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial rests on the non-movant, as it does here, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case. *Id.* The movant may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case. *Id.*

This Court considers the evidence in the light most favorable to the non-movant, but the non-movant may not merely rest on allegations set forth in the pleadings. Instead, the non-movant must show that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-movant's burden. If, once the non-movant has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-movant, summary judgment will be granted. *See Celotex Corp.*, 477 U.S. at 322; *see also* Fed. R. Civ. P. 56(c).

## Law and Analysis

Citizens allege that GE is liable under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. Ann. §§ 2800.51 et seq.  To establish a prima facie case for LPLA liability, the Citizens must show that the Campbells suffered damage that was proximately caused by a characteristic of GE's unreasonably dangerous product during a reasonably anticipated use of that product.  *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (internal citation omitted).  To show that GE's range was unreasonably dangerous, Citizens must show that the range was unreasonably dangerous in construction/composition, design, or inadequate warning.[1]  La. Rev. Stat. Ann. §§ 9:2800.55-57.

GE does not dispute that it manufactured the range in question, that it instituted a safety recall on certain previously manufactured ranges, or that the Campbells suffered damage from the fire.  Nor does GE contend that the Campbells used the range in an unanticipated way.  But GE does dispute that an unreasonably dangerous product that it manufactured caused the fire.  Specifically, GE contends Citizens have not met their burden of proving any of the unreasonably dangerous theories because Citizens have provided no evidence of the specifications or performance standards for the range or its wiring.  Without this evidence, GE contends that Citizens cannot prove the range at issue "deviated in a material way from the manufacturer's specifications or

---

[1] The LPLA also provides for recovery for failure to conform to an express warranty, but the Campbells do not seek recovery under this provision.

4

performance standards" as required by the LPLA.  *See* La. Rev. Stat. Ann. § 9:2800.55.  Finally, GE contends Citizens have provided no evidence of a design defect or inadequate warning.

The bulk of Citizens' case rests on the testimony of their expert, Ted Kaplon.  GE moves the Court to exclude Kaplon's testimony on the basis that his opinions are unreliable, unproven, and unsupported by scientific methodology or testing.  Because Kaplon's exclusion would deal a potentially fatal evidentiary blow to Citizens' case, the Court first considers GE's motion to exclude Kaplon.

Ted Kaplon as an Expert Witness

GE argues Kaplon is unqualified to render an opinion concerning the alleged unreasonably dangerous condition in the range and how that defect caused the fire.  GE argues that Kaplon did not conduct testing nor rely on literature to support his opinions.  Citizens counter that Kaplon's 30 years of experience as a licensed electrical engineer and involvement in hundreds of fire investigations qualify him to render an opinion.  Moreover, Citizens argue that Kaplon did test the range's wiring to confirm it was not turned on at the time of the fire and that his investigation followed guidelines issued by the National Fire Protection Association ("NFPA").

A witness qualified as an expert by knowledge, skill, experience, training, or education, may testify if: (1) his testimony is based upon sufficient facts or data; (2) his testimony is the product of reliable principles and methods; and, (3) he has applied the principles and methods reliably to the facts of the case.  Fed.

R. Evid. 702.   In *Daubert v. Merrell Pharmaceuticals, Inc.*, the United States Supreme Court established an analytical framework for determining the admissibility of expert testimony.   509 U.S. 579 (1993).   Suggested considerations include whether the theory or technique the expert employs is generally accepted; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation.   *Id.* at 594-95.   These factors are not dispositive because the analysis is necessarily flexible; some factors may be more or less pertinent depending on the nature of the issue.   *Chan v. Coggins*, 294 F. App'x 934, 937 (5th Cir. 2008).   A court must determine whether the reasoning and methodology underlying the expert's testimony is scientifically valid and can be properly applied to the facts of the case, looking beyond the expert's credentials to ensure an adequate "fit" between data and opinion.   *Id.*

Kaplon contends he has investigated between 3,000 and 4,000 fire scenes over 30 years to determine the cause and origin of fires, including hundreds of kitchen fires involving ranges.   His investigation conforms to NFPA 21, a guideline for investigating fires promulgated by the NFPA, of which he is a member.   He has been a member of the International Association of Arson Investigators since 1981.   He has bachelor's and master's degrees in electrical engineering, and he is registered as a professional engineer in Louisiana and six other states.   He has testified as an expert in several courts including the Middle District of Louisiana.   Although he has no specialized education with respect to

electrical ranges, he considers the one at issue a rather simple appliance involving wires, switches, and resistive heating elements, which adhere to the basic principles of electrical engineering.

Applying the *Daubert* factors to Kaplon, he qualifies as an expert by education, training, and experience.  His testimony appears based on sufficient facts because he visited the fire scene, examined the evidence, and issued a detailed report.  Furthermore, Kaplon based his testimony on widely accepted, apparently reliable methods, specifically the standards promulgated by the NFPA.  GE has not provided evidence to show how his application of these principles and methods is unreliable, and consequently, based on the detailed reports Kaplon submitted, the Court finds his analysis sufficiently reliable.

Kaplon is not an expert in the LPLA, electrical ranges or their alleged defects, but his opinions and testimony are not qualified as such.  Citizen offers him as an expert in fire investigation and causes -- that is the context in which he is qualified.  The alleged shortcomings in his expertise, such as his lack of specialized education in electrical ranges and lack of knowledge of the manufacturer's specifications and performance standards for the appliance at issue, may be used to determine the weight accorded his testimony.  However, they need not detract from his testimony's admissibility.  Therefore, GE's motion to exclude Kaplon's testimony is denied.

Construction/Composition Defect Under the LPLA

Under the LPLA, Citizens must show that the range was unreasonably dangerous in construction or composition by establishing that, "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. Ann. § 9:2800.55.

GE argues that Citizens' claim fails because it offers no evidence of the specifications or performance standards for the range and because Citizens cannot show how the range or its wiring deviated in a material way from these specifications or standards.  Citizens counter that the doctrine of res ipsa loquitur can be properly applied here to provide the evidentiary foundation for a permissible inference of liability sufficient to survive summary judgment.  The Court agrees with Citizens.

 Although the language of the LPLA appears to require direct evidence of a manufacturer's specification or performance standards, jurisprudence interpreting the Act clearly allows Citizens to prove the range's defectiveness through circumstantial evidence.  In *Lawson v. Mitsubishi Motor Sales of America*, the Louisiana Supreme Court determined the doctrine of res ipsa loquitur can be used in products liability actions.  938 So. 2d 35 (La. 2006).  The Court held that the same principles underlying tort liability under res ipsa loquitur apply to the LPLA:

> [W]e conclude that this evidentiary doctrine may also be utilized in the context of a products liability action.  We see no reason why a plaintiff cannot use circumstantial evidence in order to make the inference that a product was unreasonably dangerous when that product left a manufacturer's control.  This inference merely shifts the burden of proof to the defendant-manufacturer, such that the manufacturer must prove that the product was not defective when it left the manufacturer's control.

*Id.* at 49.

In reversing the lower courts, the *Lawson* court found that the trial judge erroneously applied res ipsa loquitur doctrine.  *Id.* at 56.  GE seizes on this reversal and asserts that Citizens likewise improperly invoke the doctrine here. GE rightly points out that *Lawson* requires that the evidence "sufficiently exclude[s] an inference of the plaintiff's own responsibility or the responsibility of others besides defendant in causing the accident."  *Id.* at 50.  However, *Lawson* is distinguishable on the facts.   In *Lawson*, a defendant car manufacturer successfully fended off res ipsa loquitur by establishing that the allegedly defective car had been previously owned by a third-party rental car company.  *Id.* at 37.  The Fifth Circuit concluded that a third-party, "perhaps a previous owner," might have caused the allegedly defective condition by doing unsuccessful repairs on the car.  *Id.* at 51.  Furthermore, the court hesitated to apply res ipsa loquitur's benefits to a plaintiff whose own actions, namely allowing their experts to permanently alter the car during their evaluations, made it impossible to isolate the source of the defect.  *Id.* at 50-51.

Conversely, nothing in this case's record evinces third-party involvement. There is no mention of a previous owner.  GE does not allege that Louisiana Citizens Property Insurance Corporation, the Campbells, or their experts impermissibly altered the range during their evaluations.  Moreover, Citizens produce evidence that the range was not turned on, thereby tending to show that the Campbells did not misuse the range, nor act negligently.  Specifically, two fire investigators determined the range was the source of the fire.  According to the investigators, the range was turned off and no other sources for the fire were discovered.  Both investigators determined the fire originated from an electrical short inside the range.  GE may be correct in arguing that the safety recall applied only to earlier versions of the range in question; however, the recall stands as more circumstantial evidence that GE manufactured a range with an unreasonably dangerous characteristic and that the range had that dangerous characteristic when it left GE's control.  Citizens need not conclusively exclude all other possible explanations for the accident, it need only show the unlikelihood of other reasonable explanations.  *Id.* at 50.  Thus, the Court finds that Citizens' presentation of circumstantial evidence of a defective product, coupled with evidence refuting user error or third party interference, sufficiently justifies invocation of res ipsa loquitur.  Because res ipsa loquitur applies, Citizens' construction/composition claims under the LPLA are substantial enough to survive a motion for summary judgment.

Design Defect and Inadequate Warning Under the LPLA

Finally, GE contends that summary judgment is proper on Citizens' LPLA defective design and inadequate warning claims because Citizens failed to offer any evidence on essential elements of the prima facie cases, namely that a reasonable alternative design existed for the range and that any warning present on the range was inadequate.  *See* La. Rev. Stat. Ann. §§ 9:2800.56-.57; *Johnson v.  Black & Decker, U.S., Inc.*, 29,996 (La. App. 2 Cir. 10/31/97); 701 So. 2d 1360, 1363, *writ denied*, (outlining the need for plaintiffs to present evidence of a reasonable alternative design in a design defect case).   And, indeed, outside the original petition, Citizens make no mention of design defect or inadequate warning claims, relying only on the petition's conclusory allegations.  *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 264-65 (5th Cir. 2002) (holding that an inadequate warning plaintiff must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial to defeat summary judgment") (internal quotation omitted). Therefore, because the Court can find nothing in the record creating a genuine issue of material fact regarding defective design or inadequate warning, summary judgment on these claims is proper.

## **Conclusion**

Because the Court finds Citizens' expert witness, Ted Kaplon, sufficiently reliable, to the extent that GE's motion seeks to exclude Kaplon's testimony, the motion is DENIED.   Additionally, because Citizens have provided sufficient circumstantial evidence to invoke res ipsa loquitur, the Court DENIES GE's motion for summary judgment on the LPLA construction/composition claim. However, because Citizens do not raise a genuine issue of material fact regarding design defect and inadequate warning, the Court GRANTS summary judgment on these claims.

Signed in Baton Rouge, Louisiana, on April 19, 2010.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**